THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALVOIL CAWLEY *et al*, Defendants-Appellants.

Second District   Nos. 78-421, 78-480, 78-481 cons.

Opinion filed November 5, 1979.

Frederick N. Aiossa and Douglas K. Morrison, both of Goldstein, Aiossa and Good, of Chicago, for appellants.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

After a jury trial, defendants David Wilson and Alvoil Cawley were convicted of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(2)). Defendant Wilson was sentenced to a term of imprisonment of 30-100 years and defendant Cawley to a term of 20-100 years. Both defendants appeal.

On the evening of December 9, 1977, defendant Wilson shot and killed one James Duncan. Sheila Johnson, defendant Cawley's girlfriend, testified at trial that Wilson and Cawley had followed Duncan in Wilson's car after discussing a robbery of Duncan. They eventually caused Duncan's car to stop by bumping his car with their own. Wilson then entered Duncan's car, which moved on and then stopped. After the car stopped, Miss Johnson saw Duncan fall out of his car and Wilson return to his own car holding a gun in his right hand.

Wilson's testimony was contrary to Miss Johnson's on a number of points. Most importantly, he testified that he had never intended to rob Duncan and that he and Cawley had not discussed robbing anyone. He claimed that he had arranged to buy a pound of marijuana from a friend of Duncan's named Russ and that when Russ took Wilson's money but did not return with the marijuana as promised, an altercation broke out between Duncan and himself. According to Wilson, Duncan pulled out a gun and, during the resulting struggle, Wilson pulled his own gun and shot Duncan.

Defendant Cawley did not testify at the trial.

Defendants were arrested and a complaint was filed, charging them with murder, on December 10, 1977. On December 16, 1977, they were brought before the court for the first time and demanded that a preliminary hearing be held. The preliminary hearing was scheduled for December 29, 1977, but on that date an indictment against the defendants was returned charging each defendant with two counts of murder and with one count of attempted armed robbery. (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a).) One of the murder counts against each defendant was based on section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(2)), which relates to one who acts with the knowledge "that such acts create a strong probability of death or great

bodily harm." This subsection, (2), is a fairly traditional murder statute. The other murder count against each defendant was based on section 9—1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(3)), which relates to the killing of someone while "attempting or committing a forcible felony other than voluntary manslaughter." Thus subsection (3) is what is commonly known as a felony-murder statute. Over defendants' objection, a preliminary hearing was never held and the case went to trial on the indictments. Both defendants were convicted of subsection (2) murder but acquitted of subsection (3) felony murder. They were also acquitted of the attempted armed robbery charge.

Defendants contend: (1) that the evidence adduced at trial was insufficient to convict either of them of murder pursuant to section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(2)); (2) that defendant Cawley was not legally accountable for the shooting actually done by defendant Wilson; (3) that they were denied due process by the failure to hold a preliminary hearing; and (4) that the sentences imposed were excessive. We disagree and affirm the convictions.

Defendants' first contention, that the evidence adduced at trial was insufficient, is based on the argument that the acquittal of each defendant of the felony-murder count and of the attempted armed robbery count somehow undercuts his conviction of the other murder count. The crux of this argument is that, since the jury found the defendants not guilty of both felony murder and of the attempted armed robbery, evidence which the State presented in an attempt to prove the felony murder and the attempted armed robbery cannot be considered by our court in determining whether there was sufficient evidence to support the verdicts in the count of murder for which the defendants stand convicted. This contention is utterly without merit.

■■ ■ It is well established in Illinois that verdicts need not be logically consistent so long as they are not legally inconsistent and that " 'In law there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts.' " (*People v. Hairston* (1970), 46 Ill. 2d 348, 362, 263 N.E.2d 840, 849.) More recently, our supreme court, in *People v. Dawson* (1975), 60 Ill. 2d 278, 280-81, 326 N.E.2d 755, 757, cited with approval the following from *United States v. Carbone* (2d Cir. 1967), 378 F.2d 420, 422:

> "The very fact that the jury may have acquitted of one or more counts in a multicount indictment because of a belief that the counts on which it was convicted will provide sufficient punishment, [citation] forbids allowing the acquittal to upset or even to affect the simultaneous conviction. We have repeatedly so

held [citations]. Indeed, if the rule were otherwise, the Government would be entitled to have the jury warned that an acquittal on some counts might undermine a guilty verdict on others—almost the opposite of the standard instruction * * *."

It is not clear whether *Dawson* signals the adoption of a new Illinois rule that even legal inconsistencies between verdicts would have no effect. (See *People v. Mullinax* (1979), 67 Ill. App. 3d 936, 384 N.E.2d 1372 (citing the distinction between legal and logical inconsistencies described in *Hairston*), and *People v. Jayne* (1977), 52 Ill. App. 3d 990, 368 N.E.2d 422 (holding that *Dawson* establishes a new rule).) For the purposes of the case before us, however, it is irrelevant as to whether *Dawson* represents a new rule; the inconsistency upon which defendants rely is, at most, merely a logical inconsistency and therefore cannot affect the guilty verdict under either *Hairston* or *Dawson*.

Defendants also attack the credibility of the witness Johnson, claiming that "her story does not hold up" and that "her testimony was clearly the result of the pressure placed upon her by the police and the assistant state's attorney who investigated the case." This attack on the credibility of Miss Johnson's story should be, and was, made to the jury rather than to a court of review. The jury was apprised of the facts surrounding Miss Johnson's questioning, heard both Miss Johnson and Wilson testify, heard the other evidence and convicted the defendants. It is the jury's appraisal of the credibility of Miss Johnson's story, not defense counsel's appraisal, that must be given weight and we see no justification for second-guessing the jury's actions herein.

■■ ■ Defendant Cawley argues that the State failed to prove him accountable for the murder. Three elements must be proved to sustain a conviction of a defendant who did not directly and personally commit the offense in question.

"(1) that he solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) that the participation on his part must have taken place either before or during the commission of the offense; and (3) that it must be with the concurrent specific intent to promote or facilitate the commission of the offense." (*People v. Marquis* (1974), 24 Ill. App. 3d 653, 663, 321 N.E.2d 480, 488.)

These elements were satisfied in the instant case. The witness, Johnson, testified that Cawley discussed robbing Duncan with Wilson. Cawley drove the car in which they followed Wilson. At one point on the expressway defendant Wilson said, "Let's get him now," but the driver, defendant Cawley, replied, "No, not now." Subsequently, defendant Cawley, at Wilson's request, did run his automobile into the rear of the

victim's car in order to stop him. After Wilson shot Duncan, Cawley asked, "Did you get anything?" Then Cawley took off, travelling without lights, at a high rate of speed, running stop lights and stop signs and let Wilson out in order to hide the gun. This evidence is sufficient to show that defendant Cawley "aided, abetted, agreed and attempted to aid" Wilson in both the planning and the commission of the offense, that Cawley participated "before or during the commission of the offense" and that he had the requisite "concurrent specific intent to promote or facilitate the commission of the offense."

When two persons have a common design to accomplish an unlawful purpose, the act of one is the act of all and all are equally guilty of whatever crime is committed. (*People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313.) Proof of the common purpose need not be supported by words of agreement or direct evidence but can be drawn from circumstances surrounding the commission of an act by a group. (*People v. Hubbard* (1972), 4 Ill. App. 3d 729, 281 N.E.2d 767.) The circumstances in the instant case clearly indicate that Cawley did not just innocently sit in the car while Wilson committed the crime but was active in planning and carrying out the robbery scheme which resulted in Duncan's death.

■■ Defendants' contention that they were denied their constitutional rights to due process of law by the failure to hold the preliminary hearing is also without merit. We were presented with an analogous situation in *People v. Arbogast* (1976), 41 Ill. App. 3d 187, 353 N.E.2d 434. In that case defendant was arraigned on the basis of a criminal complaint and a preliminary hearing was set. Prior to the preliminary hearing defendant was indicted by a grand jury for the same crime and the scheduled preliminary hearing was cancelled. In response to defendant's argument that this cancellation violated his right to a preliminary hearing, we held that:

> "* * * a defendant is not entitled to a preliminary hearing as a right but to a probable cause determination made either in a preliminary hearing or by a grand jury with reasonable promptness." (41 Ill. App. 3d 187, 191, 353 N.E.2d 434, 438.)

Defendants herein were indicted by a grand jury with reasonable promptness and, hence, received the probable-cause determination they were entitled to.

■■ Defendants' final contention is that their sentences, 30-100 years for Wilson and 20-100 years for Cawley, were excessive. Both of these sentences were within the statutory limits set forth in section 5—8—1 of the Unified Corrections Code (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1). It has long been the rule in Illinois that,

> "* * * where it is claimed that the punishment imposed is excessive, although within the limitations prescribed by the

legislature, that sentence should not be disturbed unless it is greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscriptions of section 11 of article II of the Illinois constitution which requires that all penalties should be proportioned to the nature of the offense. The trial court is normally in a superior position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review." (*People v. Fox* (1971), 48 Ill. 2d 239, 251-52, 269 N.E.2d 720, 728.) Thus, as long as it is within the guidelines of the legislature, the imposition of sentence is a matter of judicial discretion and, absent an abuse of that discretion, we will not alter the sentence on review. After reviewing the entire record, including both defendants' prior criminal records, we cannot say that the trial court abused its discretion in giving the sentences at issue.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

WOODWARD and SEIDENFELD, JJ., concur.